In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
**NO. 09-19-00137-CR**

**JONATHAN ROBERT SUTTON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 221st District Court**
**Montgomery County, Texas**
**Trial Cause No. 18-04-05416-CR**

**MEMORANDUM OPINION**

In July 2018, the State charged Jonathan Robert Sutton with online solicitation of a minor, a second-degree felony.[1] Following a trial by jury, the jury found Sutton guilty, determined he should serve a three-year sentence, and recommended that the judge suspend his sentence and place him on community supervision.[2] The trial court followed that recommendation, signing an order creating the conditions Sutton had

---

[1]*See* Tex. Penal Code Ann. § 33.021(c).
[2]Tex. Code Crim. Proc. Ann. art. 42A.055.

to complete to remain on community supervision rather than be sent to prison. One of those conditions, which Sutton argues is error in his appeal, requires that Sutton serve 180 days in the Montgomery County Jail.[3]

Sutton raises four issues in his appeal from the final judgment. First, Sutton argues the evidence is insufficient to support the jury's finding that he knowingly solicited someone he believed to be under age seventeen for sex. Second, Sutton claims the trial court abused its discretion by excluding evidence he tried to offer to show he told police, when they were investigating his case, that he would take a polygraph. Third, Sutton argues that in final argument, the prosecutor improperly suggested the jury would be sending a message to the community by the verdict it reached in Sutton's trial. Fourth, Sutton contends the trial court abused its discretion by making Sutton spend 180 days in jail as a condition of completing his community supervision. As explained below, we conclude Sutton's issues lack merit.

Background

In April 2018, a police officer, posing as a 13-year-old female on a social-media app, began chatting with Sutton over the internet. The police officer, Detective Jessica Epperson, works for a Montgomery County Constable. She

---

[3] *See id*. art. 42A.302(b) (authorizing trial courts with jurisdiction over cases in which the court chooses to place a defendant on community supervision to require defendants to submit "to a term of confinement in a county jail" for a period not to exceed 180 days).

2

testified in Sutton's trial. According to Detective Epperson, the app she used while chatting with Sutton is used as a dating app. She explained she uses the app in carrying out her duties on a police task force that finds individuals who are using the internet to find children whom they then seek to meet and exploit. Epperson testified that to carry out her duties on the task force, she uses fictitious names that she creates in a profile set up through an internet app. In the opinion, we will refer to Epperson's undercover persona as *Jill*.[4] Epperson included a photograph of a person Epperson testified appears to her to be a thirteen-year-old female in the profile she established for Jill on the app.

When Jill and Sutton began chatting through the app, Sutton asked Jill how she was. Jill responded she was "[b]ored[.]" Sutton asked Jill why and whether she was off work. Jill responded: "I[']m only 13 I got out of school at 3[.]" Sutton replied that Jill's profile stated she was 29, and he didn't think the picture matched her stated age. Jill assured Sutton it was her picture. To explain why her profile reflected she was 29, Jill told Sutton the app "won[']t let me put my real age[.]" Shortly after that, Sutton told Jill that he wasn't sure she realized what the app was for and that he didn't "think you should be talking to me. I'm 31 and could probably get in a lot of

---

[4]We refer to the online persona the detective discussed in the trial as *Jill* rather than the name the detective used to avoid compromising other investigations the detective has conducted while assigned to the task force she described.

trouble for doing so[.]" Jill told Sutton she would not tell on him. Sutton then asked whether Jill was "really only 13?" Jill replied "ya but I turn 14 in November[.]"

Ultimately, Sutton asked Jill whether she was "looking for a hookup[.]" She told him "maybe." Sutton asked Jill whether she had had sex. She replied she had, twice. A short time later, Sutton asked Jill when and where did she "want to hook-up?" Jill replied: "I[']m down if u are[.]" Then, Sutton and Jill discussed what types of sexual acts Jill enjoyed. They agreed to meet at a baseball field, which Jill told Sutton was near her home. Near the end of the conversation, Jill asked Sutton whether he would "promise to pull out." He responded: "Yeah I'll definitely pull out[.]"

Detective Epperson waited by the bleachers at the baseball field, where Sutton and Jill arranged to meet. While there, the detective saw a car approach the bleachers on the road that passes by the bleachers, slow down, pass, turn around, and return. Sutton, however, did not stop his car. Another officer in a patrol car stopped Sutton's car a short distance from the bleachers, just before he turned onto an intersecting road that led away from the field. Detective Epperson testified that she walked over to Sutton's car and identified him as the person she had been chatting with on the app.

Sutton was arrested. Police took him to the police station, where they advised him of his rights. Sutton agreed to be interviewed. While being interviewed, Sutton

4

acknowledged that he and Jill had discussed engaging in sex. He also claimed he changed his mind before the police stopped his car. Sutton agreed he told Jill he was meeting her to "hook up" and have sex. Sutton also claimed he never intended to go through with any acts involving sex that he discussed with Jill on the app.

Sutton testified in his own defense during his trial. He testified he did not knowingly solicit Jill for sex. He explained that when he chatted with Jill, her statements to him describing her age made her age unclear.[5] Sutton also testified he became suspicious when, while they were chatting, Jill changed her age multiple times. At first, she stated she was 29 on her profile. She later changed that to show that she was 79. Sutton also testified that while they chatted, Jill changed the picture on her profile. Sutton claimed the fact Jill gave him different ages and pictures confused him about Jill's true age.

At the end of the trial, the jury found Sutton guilty "of the offense of Online Solicitation of a Minor as alleged in the indictment." In the punishment hearing that followed, the jury found Sutton should serve a three-year sentence. The jury, however, also recommended that the trial court suspend Sutton's sentence and place him on community supervision. The trial court signed a judgment consistent with

---

[5]To be fair, there's no question from the evidence that Jill listed 29 as her stated age in the profile she used on the app. There's also no question the evidence shows that Jill changed her profile to make it show she was 79 while she was chatting with Sutton through the app.

5

the jury's verdict. In Sutton's community-supervision order, the trial court required Sutton to serve 180 days in the county jail.

## Issue One

In issue one, Sutton argues the evidence before the jury is insufficient to support the jury's finding that he knowingly solicited a person to have sex whom he believed to be younger than age seventeen.[6] When the defendant challenges the sufficiency of the evidence in an appeal, we review the evidence in the light that favors the verdict the jury reached to determine whether a rational factfinder, from that evidence, could have found the defendant guilty of the essential elements of the crime beyond reasonable doubt.[7] In reaching its verdict, the jury is the judge of the credibility of witnesses and may assign whatever weight it wants to assign to the testimony it heard in the trial.[8] On appeal, an appellate court does not sit as a thirteenth juror and substitute its judgment for the one the factfinder made from the evidence it heard in the trial.[9] In our review, we defer to the jury's responsibility to resolve all conflicts in the testimony, to weigh the evidence, and to draw reasonable

---

[6]Tex. Penal Code Ann. § 33.021(a)(1)(B).

[7]*Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also Brooks v. State*, 323 S.W.3d 893, 894-95 (Tex. Crim. App. 2010).

[8]*Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. [Panel Op.] 1981).

[9]*See Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); *see also Brooks*, 323 S.W.3d at 899.

inferences from the evidence presented to it during the trial.[10] If the testimony conflicts, we presume the jury resolved those conflicts in a manner favoring its verdict.[11] To decide whether the inferences the jury made were reasonable, we look to the combined and cumulative force of all the evidence after viewing it in the light favoring the jury's verdict.[12] We treat direct and circumstantial evidence equally in our review.[13]

The State indicted Sutton under section 33.021(c) of the Penal Code. Under that section, it is an offense for a person, over the internet, to knowingly solicit "a minor to meet another person, including the actor, with the intent that the minor will engage in sexual contact, sexual intercourse, or deviate sexual intercourse with the actor or another person."[14] Section 33.021(d) later provides that "[i]t is not a defense to prosecution under subsection (c) that the meeting did not occur."[15]

Sutton argues that he did not know what Jill's true age was because she made inconsistent statements about her age by claiming to be older than seventeen. He also suggests he could not have known Jill's age since she used multiple photos without sending him additional information to verify her age. Based on these

---

[10]*Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).
[11]*Brooks*, 323 S.W.3d at 899 n.13; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).
[12]*Clayton*, 235 S.W.3d at 778.
[13]*Id*.
[14]Tex. Penal Code Ann. § 33.021(c).
[15]*Id*. § 33.021(d).

arguments, Sutton concludes the State "hardly prove[d] that [Sutton] knowingly solicited a minor or knowingly had any idea what [Jill's] true age was." But the question is not whether Sutton knew Jill's true age. Instead, the question is whether the jury's finding that Sutton believed Jill to be younger than seventeen when he arranged to meet with her is a reasonable inference based on the evidence the jury heard during Sutton's trial.[16]

We conclude the answer is yes. Jill told Sutton twice while chatting with him on the app she was just thirteen. She explained the other ages he saw on her profile were not her age, and she explained the app would not allow her to show she was thirteen. The evidence the jury heard shows Sutton arranged to meet with Jill at the ball fields. The two discussed engaging in acts involving sex. The fact Sutton drove to the ball field is evidence reasonable jurors could rely on to conclude that Sutton, when arranging to meet, had the intent that he and Jill would engage in acts prohibited by statute.[17] Summing it up, we defer to the jury's finding that Sutton believed Jill to be younger than seventeen when he arranged the meeting since that finding is reasonable given the evidence the jury heard in Sutton's trial.[18] Because

---

[16]*See Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986) (noting that "[t]he jury, as the judges of the facts and credibility of the witnesses, could choose to believe or not believe the witnesses, or any portion of their testimony").

[17]Tex. Penal Code Ann. § 33.021.

[18]*See id.* § 33.021(a)(1)(B) (defining *minor* to include "an individual whom the actor believes to be younger than 17 years of age").

8

the jury finding is reasonable based on the testimony admitted before the jury in Sutton's trial, Sutton's first issue is overruled. [19]

## Issue Two

In issue two, Sutton argues the trial court erred by excluding the testimony he wanted to offer to show that, when interviewed by the police, he offered to take a polygraph. According to Sutton, the prosecutor opened the door to admitting his testimony to correct a false impression he claims the prosecutor created when he asked Sutton, on cross-examination, whether Sutton ever returned to the police station to advise police that the statement he gave them "wasn't entirely accurate." The trial court overruled Sutton's request to testify about offering to take a polygraph.

Rulings admitting or excluding evidence are reviewed for abuse of discretion.[20] Generally, the existence, results, and testimony showing the defendant offered or refused to take a polygraph are inadmissible in the trial of a criminal case.[21] At trial, Sutton argued his testimony about his offer should be admitted to rebut the prosecutor's suggestion that Sutton needed to correct a false impression that he failed to cooperate with police by not returning to the police station to correct

[19]*See id*. §§ 33.021(a)(1)(B), 33.021(a)(2), 33.021(c); *Brooks*, 323 S.W.3d at 902 n.19; *Clayton*, 235 S.W.3d at 778; *Hooper*, 214 S.W.3d at 13; *Penagraph*, 623 S.W.2d at 343.

[20]*Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010).

[21]*Tennard v. State*, 802 S.W.2d 678, 683 (Tex. Crim. App. 1990) (en banc).

his original statement. But the prosecutor's question asking whether Sutton returned to the station does not accuse Sutton of having failed to cooperate with any requests made of him by the police. Instead, the question implies Sutton was not being completely truthful with police during his original statement, and that is a matter concerning his credibility that has little or no bearing on whether he cooperated with police and answered their questions the night of his arrest.

Even if the prosecutor's question does infer that Sutton was not fully cooperative, a matter about which we disagree, the risk in admitting Sutton's offer to take a polygraph outweighs whatever slight relevance it could have to show whether he cooperated with the police. The Court of Criminal Appeals has consistently held that polygraphs are not reliable enough to make them admissible in trials.[22] And since Sutton never took a polygraph, it is not the results of a polygraph that Sutton wanted the jury to consider in his trial. Instead, we think the reason Sutton wanted to testify about offering to take a polygraph was to bolster his own credibility to show he told the jury the truth when he testified in his trial. But allowing juries to consider questions about taking polygraphs to bolster a witness's

_____

[22]*See Nesbit v. State*, 227 S.W.3d 64, 66 n.4 (Tex. Crim. App. 2007); *Tennard*, 802 S.W.2d at 683; *Castillo v. State*, 739 S.W.2d 280, 293 (Tex. Crim. App. 1987); *Nethery v. State*, 692 S.W.2d 686, 700 (Tex. Crim. App. 1985); *Renesto v. State*, 452 S.W.2d 498, 500 (Tex. Crim. App. 1970); *Placker v. State*, 350 S.W.2d 546, 547 (Tex. Crim. App. 1961); *Davis v. State*, 308 S.W.2d 880, 883 (Tex. Crim. App. 1957); *Stockwell v. State*, 301 S.W.2d 669, 671 (Tex. Crim. App. 1957); *Peterson v. State*, 247 S.W.2d 110, 111 (1951).

credibility, like questions about their results, would create error in trying a criminal case.[23] The Court of Criminal Appeals explained as much, in its view, that jurors are better than polygraphs at reliably determining whether a witness is being truthful.[24]

Thus, trial courts take a high risk of reversal should they choose to admit evidence that the witness agreed, refused, or took a polygraph. In *Nichols v. State*,[25] the Court of Criminal Appeals reversed a defendant's conviction based on the trial court's decision to allow the prosecutor to ask a witness a question about whether she submitted to a polygraph even though the results of the polygraph were never admitted in the trial. In *Nichols*, the prosecutor asked a prosecution witness to tell the jury, without disclosing the results, whether she had submitted to a polygraph.[26] The witness stated she took a polygraph.[27] In reversing the conviction, the Court of Criminal Appeals found the question harmful because the question implied the witness passed the polygraph when the results of the test were not admitted.[28] Explaining why the evidence was so prejudicial, the *Nichols* Court stated: "We think

---

[23]*See Reed v. State*, 522 S.W.2d 466, 468-69 (Tex. Crim. App. 1975); *Hannon v. State*, 475 S.W.2d 800, 802-03 (Tex. Crim. App. 1972); *Renesto*, 452 S.W.2d at 500; *Washburn v. State*, 318 S.W.2d 627, 637 (Tex. Crim. App. 1958).

[24]*See Russell v. State*, 798 S.W.2d 632, 635 (Tex. App.—Fort Worth 1990, no pet.); *Banda v. State*, 727 S.W.2d 679, 682 (Tex. App.—Austin 1987, no pet.).

[25]378 S.W.2d 335 (Tex. Crim. App. 1964).

[26]*Id.* at 336.

[27]*Id.*

[28]*Id.*

it fair to observe that the only reason that anyone would possibly take a lie detector test would be to determine whether or not they were telling the truth."[29]

Turning to Sutton's case, the same problem exists with the evidence Sutton proffered in his trial. It is not known whether he would have passed a polygraph if he had taken one. Yet the risk the jury might have used his offer to take the test as inferring he would have passed would have irrationally bolstered Sutton's credibility about his claim that when he spoke to the police, he told them the unvarnished truth.[30]

We hold the trial court properly excluded Sutton's testimony for three reasons. First, the State did not, as Sutton argued, open the door to the testimony by accusing Sutton of failing to cooperate with the police. Second, the testimony was not relevant to proving that Sutton testified truthfully in the trial or was truthful when he spoke to police.[31] Third, the relevance of the testimony that Sutton offered to take a polygraph, if relevant at all, is outweighed by the risk that the jury might use the

---

[29]*Id*. at 337; *see also Russell*, 798 S.W.2d at 635 ("Clearly, any reference to polygraph or lie detector tests is improper even when the test result is not disclosed.").

[30]*See Robinson v. State*, 550 S.W.2d 54, 60-61 (Tex. Crim. App. 1977) (explaining that it would be unrealistic for courts, after recognizing the inherent unreliability involved with polygraphs, not to also believe that jurors might use the testimony of a witness who stated she took and passed a lie detector test as evidence that bolstered (for irrational reasons) the witness's testimony when deciding whether the witness was telling the truth).

[31]Tex. R. Evid. 402 ("Irrelevant evidence is not admissible.").

testimony in an irrational way to bolster Sutton's credibility as a witness in the trial.[32]

For these reasons, Sutton's second issue is overruled.

## Issue Three

In issue three, Sutton argues that the prosecutor made an inflammatory and improper argument in the guilt phase of his trial. We set out the argument Sutton complains about below.

> PROSECUTOR: [T]he decision that you make today is going to send a message. And it is going to send a message to the people in our community either that we take child sexual abuse seriously or we don't.

The record shows that during the trial, Sutton never objected to the argument.

On appeal, Sutton relies on *Cortez v. State*[33] to argue that a fair trial cannot be had if the trial is tainted by improper argument. But *Cortez* is easily distinguished from the facts before us here. In *Cortez*, the defendant objected to the prosecutor's argument at trial: Sutton did not.[34] To preserve error, the party that seeks to complain about the alleged error in the appeal must show he lodged a timely objection, which notified the trial court of his complaint, and that the trial court gave him an adverse

---

[32]Tex. R. Evid. 403 (allowing courts to exclude relevant evidence if its probative value is substantially outweighed by, among other things, a danger of unfair prejudice).
[33]683 S.W.2d 419, 420 (Tex. Crim. App. 1984)
[34]*Id.* at 421 (noting the trial court erred in overruling the defendant's objection to the argument).

ruling on the objection in his trial.[35] Under the rules of error preservation, a party's rights—including complaints about allegedly improper final argument—are forfeitable if the defendant fails to exercise them at trial.[36]

We agree with the State that the complaint Sutton raises about the prosecutor's final argument was not preserved for our review. Sutton's third issue is overruled.[37]

Issue Four

In issue four, Sutton argues the trial court abused its discretion by requiring him to spend 180 days in the Montgomery County Jail as a condition of placing him on community supervision. According to Sutton, by ordering him jailed, the trial court violated the election he made asking that a jury decide his punishment. In response, the State argues Sutton forfeited his right to complain about the condition because he failed to object to the community-supervision order while he was in the court below.

We agree the record does not show that Sutton objected to any of the conditions in the community-supervision order the trial court signed in Sutton's case. To preserve error, the defendant "must complain at trial to conditions [of community

---

[35]*See* Tex. R. App. P. 33.1(a); *Cooks v. State*, 844 S.W.2d 697, 727 (Tex. Crim. App. 1992).

[36]*See Hernandez v. State*, 538 S.W.3d 619, 622 (Tex. Crim. App. 2018) (citing *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996)).

[37] *See* Tex. R. App. P. 33.1(a); *Cockrell*, 933 S.W.2d at 89.

14

supervision] he finds objectionable."[38] What's more, the trial court that has jurisdiction over the defendant's case may, when placing the defendant on community supervision in a case involving a conviction on a felony, require the defendant to "submit to a term of confinement in a county jail [for a term not to exceed] 180 days[.]"[39] So Sutton's "sentence" is not illegal since his sentence is authorized by the statute that governs community-supervision orders on convictions that involve a felony. Finally, Sutton has not argued the trial court's decision ordering a 180-day period of confinement in a county jail violates any rights that a defendant cannot waive.[40]

We conclude Sutton failed to preserve the complaint he raises in his fourth issue for our review.[41] Sutton's fourth issue is overruled.

## Conclusion

Having overruled Sutton's issues, the trial court's judgment is

---

[38]*Speth v. State*, 6 S.W.3d 530, 534 (Tex. Crim. App. 1999).

[39]Tex. Code Crim. Proc. Ann. art. 42A.302(a)(2).

[40]*See Guiterrez v. State*, 380 S.W.3d 167, 175 (Tex. Crim. App. 2012) (recognizing that *Speth* does not categorically hold that defendants may not first complain about a condition of probation on appeal if it "violates an absolute prohibition as envisioned by *Marin* [*v. State*, 851 S.W.2d 275, 279 (Tex. Crim. App. 1993)]").

[41]*See* Tex. R. App. P. 33.1(a).

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on January 25, 2021
Opinion Delivered May 5, 2021
Do Not Publish

Before Golemon, C.J., Kreger and Horton, JJ.